**Francis William STRINGER,
Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–05–111–CR.**

Court of Appeals of Texas,
Fort Worth.

May 4, 2006.

---

David A. Pearson IV, Fort Worth, for appellant.

Tim Curry, Crim. D.A., Charles M. Mallin, Asst. Crim. D.A. and Chief of the Appellate Division, Debra Ann Windsor, Martin L. Purselley, Asst. Crim. D.As., Fort Worth, for State.

PANEL F: DAUPHINOT, HOLMAN, and WALKER, JJ.

## MEMORANDUM OPINION[1]

SUE WALKER, Justice.

Appellant Francis William Stringer pleaded guilty to the offense of possession of child pornography, and the trial court sentenced him to nine years' confinement. In a single point, Stringer complains that the trial court erred by overruling his objection to the admission of testimonial portions of a pre-sentence investigation report admitted during the punishment phase of his trial. Before pleading guilty, Stringer signed a document entitled "Written Plea Admonishments," which provides in relevant part:

> Joined by my attorney and in accordance with Art. 1.13 and 1.15 of the

1. See Tex.R.App. P. 47.4.

Code of Criminal Procedure, I waive and give up my right to a jury, both as to my guilt and assessment of my punishment. Under Art. 1.15, Code of Criminal Procedure, I waive and give up the right to appearance, confrontation, and cross-examination of the witnesses, and I consent to oral and written stipulations of evidence.

See TEX.CODE CRIM. PROC. ANN. art. 26.13(d) (Vernon Supp.2005). Stringer did not waive the preparation of a pre-sentence investigation report.[2] Stringer's counsel also signed the admonishments and acknowledged the following:

I have fully reviewed and explained to [Stringer] the above and foregoing Court Admonishments, rights, and waivers and the following Judicial Confession, and am satisfied that [Stringer] understands each, and is legally competent and has freely, intelligently, knowingly, and voluntarily waived his rights, has judicially confessed his guilt, and will plead guilty understanding the consequences thereof.

The court also signed the admonishments and found that Stringer was "mentally competent and that his plea [was] intelligently, freely, knowingly, and voluntarily entered."

■■■ The Sixth Amendment right to confront and cross-examine witnesses may be waived. See Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966); see also Tacon v. Arizona, 410 U.S. 351, 355, 93 S.Ct. 998, 1000, 35 L.Ed.2d 346 (1973) (Douglas, J., dissent-

ing). There is a presumption against the waiver of constitutional rights; therefore, for a waiver to be effective, "it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" Brookhart, 384 U.S. at 4, 86 S.Ct. at 1247 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), overruled in part on other grounds by Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)); see also Tacon, 410 U.S. at 355, 93 S.Ct. at 1000–01 (Douglas, J., dissenting). "The determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Tacon, 410 U.S. at 355, 93 S.Ct. at 1000–01 (Douglas, J., dissenting) (quoting Johnson, 304 U.S. at 464, 58 S.Ct. at 1023). Furthermore, the United States Supreme Court has also held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. at 355, 93 S.Ct. at 1001 (Douglas, J., dissenting) (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)).

As the State points out, we recently construed a waiver similar to the one signed by Stringer. See Rosalez v. State, 190 S.W.3d 770, 771 (Tex.App.-Fort Worth 2006, no pet.).[3] In that case, Rosalez contended that the trial court violated his

2. The written admonishments included a waiver of the preparation of a pre-sentence investigation report. The trial court struck through the provision and initialed the change. In Stringer's brief, he states that he agreed to an interview for the pre-sentence investigation report. During the interview, Stringer refused to answer any questions about a pending Dallas County charge for possession of child pornography. During the punishment phase of Stringer's trial, he objected to four paragraphs of the pre-sentence investigation report that detailed this charge.

3. We decided Rosalez after Stringer filed his brief in this appeal.

Sixth Amendment right to confrontation when it admitted portions of a pre-sentence investigation report during sentencing. *Id.* We held that Rosalez "knowingly, voluntarily, and intelligently waived his Sixth Amendment right to confront and cross-examine witnesses at the sentencing hearing." *Id.* at 773.

■ The admonishments signed by Rosalez were substantially similar to the admonishments signed by Stringer. Both admonishments stated that the defendants waived their rights to jury trials during both the guilt-innocence and punishment stages of trial, and both admonishments stated that the defendants waived their rights to confront and cross-examine witnesses. *See id.* at 771. Additionally, counsel for both defendants acknowledged that their clients understood their rights and that they knowingly and voluntarily waived them. *See id.* at 772–73. Lastly, the trial court here found that Stringer was mentally competent when he entered the plea and that he entered his plea "intelligently, freely, voluntarily, and knowingly," and the trial court in *Rosalez* made substantially similar findings concerning Rosalez. *See id.* at 773. Stringer has not presented, nor does the record provide, any facts that would show that he did not knowingly and intelligently waive his rights to confrontation and cross-examination of witnesses. *See Tacon,* 410 U.S. at 355, 93 S.Ct. at 1001 (Douglas, J., dissenting); *Rosalez,* 190 S.W.3d at 773.

We hold that Stringer knowingly, voluntarily, and intelligently waived his Sixth Amendment right to confront and cross-examine witnesses at the sentencing hearing.[4] *See Rosalez,* 190 S.W.3d at 773; *see also Tacon,* 410 U.S. at 355, 93 S.Ct. at 1001 (Douglas, J., dissenting). Therefore, the trial court did not err by admitting testimonial portions of the pre-sentence investigation report during the punishment phase of Stringer's trial. Accordingly, we overrule Stringer's sole point and affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I respectfully dissent from the majority's holding that a defendant who waives confrontation of witnesses and agrees to stipulate to evidence of guilt is bound by that waiver when the State seeks to admit, over his confrontation objection, hearsay evidence of extraneous acts of misconduct as punishment evidence.

In *Carroll v. State,* the Texas Court of Criminal Appeals held,

[W]here a defendant pleads guilty either before a judge or jury the trial becomes "unitary." And as a result, there does not exist a separate punishment phase. Therefore, we hold that appellant's written waiver of her Fifth Amendment right not to self-incriminate applied to the entire criminal adjudication proceeding including the assessment of punishment.[1]

---

4. Because we hold that Stringer waived any Sixth Amendment right to confrontation in the sentencing phase, we need not decide whether the statements in the pre-sentence investigation report are testimonial under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *See Rousseau v. State,* 171 S.W.3d 871, 880–81 (Tex.

Crim.App.2005) (holding that the trial court erred by admitting testimonial statements during the punishment phase of trial), *petition for cert. filed,* 74 U.S.L.W 3407 (U.S. Jan 3, 2006.).

1. *Carroll v. State,* 975 S.W.2d 630, 632 (Tex. Crim.App.1998).

In *Carroll v. State IV*,[2] the Texas Court of Criminal Appeals reversed its holding that a defendant who had waived his right to remain silent at guilt was bound by that waiver when it came to punishment evidence.[3] The *Carroll IV* court pointed out that in *Mitchell v. United States*,[4]

> the Supreme Court explicitly rejected the proposition that "incrimination is complete once guilt has been adjudicated." It stated that the proper rule is that "[a]lthough the witness has pleaded guilty to a crime charged but has not been sentenced, his constitutional privilege remains unimpaired." It went on to explain:
>
> > It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.
> >
> > Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in *Estelle [v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)]: "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Estelle* was a capital case, but we find no reason not to apply the principle to noncapital sentencing hearings as well. The essence of this basic constitutional principle is the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.
> >
> > . . . .
> >
> > Our rule is applicable whether or not the sentencing hearing is deemed a proceeding separate from the Rule 11 hearing, an issue we need not resolve.

*Id.* (citations and internal quotation marks omitted). In the instant case, appellant had pled guilty to the offense charged, but her sentence had not been determined. Thus, based on *Mitchell,* we hold that appellant's guilty plea to the offense charged did not waive her right against self-incrimination as to sentencing.[5]

The waiver Carroll signed was essentially the same as the waiver in the case now before this court. The *Carroll IV* court stated,

> Thus, appellant was explicitly warned about a waiver of the long-standing right to silence at the guilt phase, but was not given a similar specific warning regarding a right to silence at sentencing. Indeed, she was told by the trial court that she did not have such a right.[6]

The concurring opinion in *Carroll IV* emphasized that in *Mitchell,*

> the Supreme Court made clear that a waiver of one's right against self-incrimination in the context of a guilty plea, turns not upon whether the proceeding

---

**2.** 42 S.W.3d 129 (Tex.Crim.App.2001).

**3.** *Id.* at 132.

**4.** 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

**5.** *Carroll IV,* 42 S.W.3d at 132 (citations omitted).

**6.** *Id.* at 133.

in which it is executed is unitary or bifurcated, but upon the nature of what is given up by the guilty plea and the principles underlying one's constitutional right against self-incrimination:

> There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. Unlike the defendant taking the stand, who "cannot reasonably claim that the Fifth Amendment gives him ... an immunity from cross-examination on the matters he has himself put in dispute," the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense. Rather, the defendant takes those matters out of dispute, often by making a joint statement with the prosecution or confirming the prosecution's version of the facts. Under these circumstances, there is little danger that the court will be misled by selective disclosure. . . .

* * *

Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in *Estelle:* "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself." To maintain that sentencing proceedings are not part of "any criminal case" is contrary to the law and to common sense. As to the law, under the Federal Rules of Crim-

inal Procedure, a court must impose sentence before a judgment of conviction can issue. As to common sense, it appears that in this case, as is often true in the criminal justice system, the defendant was less concerned with the proof of her guilt or innocence than with the severity of her punishment. Petitioner faced imprisonment from one year upwards to life, depending on the circumstances of the crime. To say that she had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important. Our rule is applicable whether or not the sentencing hearing is deemed a proceeding separate from the Rule 11 hearing, an issue we need not resolve.

* * *

.... The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege.[7]

The case now before this court differs from *Carroll I, II, III,* and *IV* in that at guilt, Appellant waived his right to confront and cross-examine witnesses and requested the pre-sentence investigation report (PSI), and at punishment, he objected to the PSI evidence of extraneous offenses purportedly committed in Dallas County as a denial of his right to confront and cross-examine witnesses against him. The right of confrontation and cross-examination is a significant constitutional right, just like the right to remain silent. As in *Carroll,* the

---

7. *Id.* at 135–36 (Meyers, J., concurring) (quoting *Mitchell,* 526 U.S. at 322–30, 119 S.Ct. at 1312–16) (citations omitted).

issue of guilt of the primary offense was uncontested. And, as in *Carroll*, when the sentence has not yet been imposed, a defendant may have a legitimate fear of adverse consequences at punishment from hearsay evidence regarding extraneous acts of misconduct.

Unlike the facts and law governing *Carroll*, however, a specific provision in the Texas Code of Criminal Procedure allows a defendant such as Appellant, or his attorney, to comment on a PSI.[8] With the judge's permission, the defendant may also contest portions of the PSI by offering evidence of factual inaccuracies in the investigation or report.[9] This is true even though the defendant requested the PSI.[10] The law does not force the defendant into an "all or nothing" position. Consequently, Appellant properly contested portions of the PSI.

In a jury trial, a jury must be instructed that they may not consider extraneous offenses or acts of misconduct unless they believe beyond a reasonable doubt that the defendant committed those acts and offenses.[11] The State, then, bears a burden of proof beyond a reasonable doubt when it seeks to prove extraneous offenses at the punishment phase of a jury trial.[12] The State is not relieved of its burden of proof merely because the trial judge assesses punishment.[13]

Additionally, the protections of the Confrontation Clause apply to the punishment phase of trial.[14] The Texas Court of Criminal Appeals held in *Russeau v. State*,

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This procedural guarantee is applicable in both federal and state prosecutions and bars the admission of testimonial statements of a witness who does not appear at trial unless he is unavailable to testify and the defendant had a prior opportunity to cross-examine him. Generally speaking, a statement is "testimonial" if it is a solemn declaration made for the purpose of establishing some fact.

The reports in question contained testimonial statements which were inadmissible under the Confrontation Clause, because the State did not show that the declarants were unavailable to testify and appellant never had an opportunity to cross-examine any of them. Indeed, the statements in the reports amounted to unsworn, ex parte affidavits of government employees and were the very type of evidence the Clause was intended to prohibit. The trial court erred in admitting those portions of the reports that contained the testimonial statements.[15]

Similarly, in the case now before this court, the statements in the PSI were clearly testimonial. The State did not show that the declarants were unavailable to testify, and Appellant never had an opportunity to cross-examine any of them. Appellant preserved his confrontation ob-

---

8. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(e) (Vernon Supp.2005).

9. *Id.*

10. *See id.* § 9(d).

11. *Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex.Crim.App.2000); TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2005).

12. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

13. *Id.*

14. *Russeau v. State*, 171 S.W.3d 871, 880–81 (Tex.Crim.App.2005).

15. *Id.* (citations omitted).

jection in the trial court and did not waive it merely because he requested a PSI. The portion of the PSI accusing Appellant of extraneous acts of misconduct was properly objected to, and the trial court should have sustained Appellant's objections. Because the trial court denied Appellant his constitutional right to confront and cross-examine witnesses accusing him of crimes, the trial court erred. Additionally, the State emphasized the extraneous acts of misconduct in its closing argument to the trial court, harming Appellant.[16] Because the majority does not hold that the trial court reversibly erred, I must respectfully dissent.